UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 24-800-KK-SHKx** | Date: | June 26, 2024 |
| Title: | *Ana Francisca Garcia v. Marriott International, Inc., et al.* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   (In Chambers) Order DENYING Plaintiff's Motion to Remand [Dkt. 15]

## I.
## INTRODUCTION

On May 15, 2024, plaintiff Ana Francisca Garcia ("Plaintiff") filed a Motion to Remand ("Motion") this action to state court arguing defendants Marriott International, Inc. and Renaissance Hotel Operating Company ("Defendants") have "failed to meet their burden of establishing that the amount in controversy exceeds $75,000" as required for diversity jurisdiction. ECF Docket No. ("Dkt.") 15 at 2. On May 30, 2024, Defendants filed an Opposition to the Motion. Dkt. 18. On June 6, 2024, Plaintiff filed a Reply. Dkt. 21. The matter thus stands submitted.

The Court finds this matter appropriate for resolution without oral argument. See FED. R. CIV. P. 78(b); L.R. 7-15. For the reasons set forth below, Plaintiff's Motion to Remand is **DENIED**.

## II.
## BACKGROUND

On March 7, 2024, Plaintiff commenced this action by filing a Complaint in Riverside County Superior Court, alleging various state claims arising out of Plaintiff's employment with Defendants. Dkt. 1-1. Plaintiff alleges she was hired by Defendants on June 6, 2023 "to work as a laundry attendant." Id. ¶ 19. Plaintiff further alleges she "performed all of [her] duties satisfactorily" before being "wrongfully terminated" by Defendants on August 24, 2023 for "exercising [her] right to request an accommodation" based on Plaintiff's disability and/or medical

condition. Id. ¶¶ 19, 27. During the course of Plaintiff's employment, Plaintiff earned an hourly rate of $18.25 and generally worked 40 hours per week. Dkt. 18-1, Declaration of Jessamy Maraden, ¶¶ 5-6, Ex. A.

As a result of Defendants' alleged wrongful termination, Plaintiff seeks compensatory damages for past and future lost wages and benefits and emotional distress, as well as punitive damages. Dkt. 1-1 at 20-21; see also id. ¶¶ 32-35. Additionally, Plaintiff seeks reasonable attorney's fees and costs pursuant to Section 12965(c)(6)[1] of the California Government Code. Id. ¶¶ 50, 62, 68, 76, 84, 93.

On March 14, 2024, Plaintiff served Defendants with a copy of the summons and Complaint. Dkt. 3, Declaration of David L. Cheng ("Cheng Decl."), ¶¶ 3-4, Ex. B. On April 12, 2024, Defendants filed an Answer. Dkt. 1-2.

On April 15, 2024, Defendants filed a Notice of Removal, asserting the Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Dkt. 1; see also Cheng Decl., ¶ 2. With respect to the diversity of citizenship requirement, Defendants assert complete diversity exists because Plaintiff is domiciled in California and Defendants are corporations organized under the laws of Delaware with their principal places of business in Maryland. Dkt. 1 ¶¶ 12-13. With respect to the amount in controversy requirement, Defendants assert this requirement is met because Plaintiff is seeking at least $102,270 in damages. Id. ¶ 29. Specifically, Defendants assert Plaintiff is, at minimum, seeking $24,090 in lost wages, $24,090 in non-economic/emotional distress damages, $24,090 in punitive damages, and $30,000 in attorney's fees. Id.

Defendants timely removed this action.[2] Dkt. 1 ¶ 7. A jury trial is set for May 5, 2025. Dkt. 19.

## III.
## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. Kokkonen v. Guardian Life Ins. Co., 511

---

[1] Plaintiff's references in the Complaint to Section 12965(b) of the California Government Code, the former provision authorizing an award of attorney's fees under the Fair Employment and Housing Act, appear to be in error.

[2] When the last day of the thirty-day period for removal established by 28 U.S.C. § 1446(b) falls on a weekend, the removing party has until the following business day to file its notice of removal. Pogosyan v. U.S. Bank Trust Nat'l Ass'n, No. CV 15-7085-AB-RAOx, 2015 WL 12696188, at *2 (C.D. Cal. Oct. 22, 2015); see also FED. R. CIV. P. 6(a)(1)(C) ("[I]f the last day [of a period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Here, the last day of the thirty-day period following Defendants' receipt of the summons and Complaint was April 13, 2024, a Saturday. See Cheng Decl., ¶ 3. Hence, Defendants had until Monday, April 15, 2024, to file their Notice of Removal.

U.S. 375, 377 (1994).  A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  If the federal court lacks subject matter jurisdiction, the action must be remanded to state court.  28 U.S.C. § 1447(c).  "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute."  California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004).

A party invoking diversity jurisdiction must establish: (1) complete diversity of citizenship between the parties; and (2) the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  For purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1); Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

To determine the amount in controversy, "courts first look to the complaint" and generally find "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).  Where the amount in controversy is unclear or ambiguous from the face of the state court complaint, "a defendant's amount in controversy allegation is normally accepted . . . unless it is 'contested by the plaintiff or questioned by the court.'"  Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 992 (9th Cir. 2022) (quoting Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87 (2014)).

"When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied.'"  Id. (quoting Dart Cherokee Basin Operating, 574 U.S. at 88).  Parties may submit evidence, "including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  Ibarra, 775 F.3d at 1197 (internal quotation marks omitted).  "A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold."  Harris v. KM Indus., Inc., 980 F.3d 694, 701 (9th Cir. 2020).  However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture[.]"  Ibarra, 775 F.3d at 1197.

### IV.
### DEFENDANTS HAVE ESTABLISHED THE COURT HAS DIVERSITY JURISDICTION OVER THE INSTANT ACTION

The Court finds Defendants have established this Court has diversity jurisdiction over the instant action.  As an initial matter, neither party disputes complete diversity of citizenship exists between Plaintiff, a citizen of the state of California, and Defendants, corporations organized under the laws of the state of Delaware with their principal places of business in the state of Maryland.  Dkt. 1 ¶¶ 12-13; dkt. 15 at 6 n.1.  Rather, the disputed issue is whether the amount in controversy exceeds $75,000.

///

Defendants assert Plaintiff is, at minimum, seeking $24,090 in lost wages, $24,090 in non-economic/emotional distress damages, $24,090 in punitive damages, and $30,000 in attorney's fees, for a total of $102,270 in damages.  Dkt. 1 ¶ 29.  Defendants have presented declarations and exhibits in support of their claim.  Plaintiff asserts Defendants "have failed to meet their burden of establishing that the amount in controversy exceeds $75,000[.]"  Dkt. 15 at 2.  Plaintiff has presented no evidence in support of her claim.

### 1. Lost Wages

"If a plaintiff claims at the time of removal that her termination caused her to lose future wages, . . . then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them."  Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 417 (9th Cir. 2018).  Thus, if a plaintiff "put[s] future wages in controversy," the court may "include lost wages up until the date of trial" in the amount in controversy.  Reyes v. Staples Off. Superstore, LLC, No. CV 19-07086-CJC-SKx, 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019).  Courts have "often found that one year from the date of removal is a 'conservative estimate of the trial date' in employment cases."  Id.

Here, Plaintiff's projected lost wages between her termination date of August 24, 2023 and Defendants' Notice of Removal date of April 15, 2024 equal a sum of $24,090 ($18.25 per hour x 40 hours per week = $730 times 33 weeks).  Moreover, because Plaintiff seeks "future lost wages and benefits[,]" dkt. 1-1 ¶ 32, future wages are, thus, also at stake in the litigation, see Chavez, 888 F.3d at 417.  In light of the fact this action is set for trial on May 5, 2025, see dkt. 19, Plaintiff's projected lost wages between her termination date of August 24, 2023 and the trial date equal a sum of $64,240 ($18.25 per hour x 40 hours per week = $730 times 88 weeks).  Thus, the Court finds Defendants' estimation of lost wages in the amount of $24,090, which is significantly less than Plaintiff's projected lost wages through trial, is eminently reasonable.

### 2. Non-Economic/Emotional Distress Damages

Emotional distress damages are "properly considered in the amount in controversy for jurisdiction purposes."  Sasso v. Noble Utah Long Beach, LLC, No. CV 14-9154-AB-AJWx, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015).  In fact, "emotional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint."  Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002).  To establish the amount of emotional distress in controversy, "a defendant may introduce evidence of jury verdicts in other cases."  Sasso, 2015 WL 898468, at *6.

Here, Plaintiff seeks an unspecified amount of general damages "for mental pain and anguish and emotional distress and loss of earning capacity[.]"  Dkt. 1-1 at 20.  In Defendants' Notice of Removal, Defendants provide evidence of jury verdicts in other cases, including a Ninth Circuit opinion affirming denial of a new trial in a case in which the jury awarded emotional distress damages of more than five times the amount of the underlying economic damages.  See dkt. 1 at 8 (referencing Swinton v. Potomac Corp., 270 F.3d 794, 799 (9th Cir. 2001)).  In light of such verdicts, Defendants estimate Plaintiff's emotional distress damages to be, at minimum, a 1:1 ratio of emotional distress damages to economic damages.  Based upon this evidence, and in light of the estimate of economic damages set forth in Section IV.1, the Court finds Defendants' estimation of emotional distress damages in the amount of $24,090 is reasonable.

### 3. Attorney's Fees

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). "The reasonableness of attorney's fees, when such fees are unascertainable on the face of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." Sasso, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015).

Here, Plaintiff seeks attorney's fees pursuant to Section 12965(c)(6) of the California Government Code[3] which provides, in relevant part, "[i]n civil actions brought under this section, the court, in its discretion, may award to the prevailing party, . . . reasonable attorney's fees and costs[.]" Cal. Gov't Code § 12965; see also dkt. 1-1 ¶¶ 50, 62, 68, 76, 84, 93. As such, these fees may be included in the amount in controversy. See Galt G/S, 142 F.3d at 1156. Additionally, this Court and others have held that a reasonable rate for employment cases is $300 per hour. Moreover, recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours. Garcia v. ACE Cash Express, Inc., No. SACV 14-285-DOC-RNBx, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014) (finding estimates of "$300 per hour with 100 hours expended" reasonable for an employment action). Thus, the Court finds Defendants' estimation of attorney's fees in the amount of $30,000 based upon $300 per hour with 100 hours expended is reasonable.

Accordingly, based upon a conservative estimate of lost wages in the amount of $24,090, non-economic/emotional distress damages in the amount of $24,090, and attorney's fees in the amount of $30,000, the Court finds Defendants have met their burden of establishing the Court's diversity jurisdiction over the instant action.[4]

## V.
## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

---

[3] Section 12965(c)(6) of the California Government Code authorizes an award of attorney's fees to the prevailing party where, as here, an action is brought under the Fair Employment and Housing Act. See Cal. Gov't Code § 12965(c)(6).

[4] In light of the amount in controversy exceeding the $75,000 minimum by estimated lost wages, non-economic/emotional distress damages, and attorney's fees, the Court declines to address whether Defendants' estimation of punitive damages is reasonable. The Court notes, however, "[d]istrict courts within the Ninth Circuit have described a 1:1 ratio of punitive damages to compensatory damages as 'conservative' for purposes of assessing the amount in controversy requirement." Guillen v. Kindred Healthcare Operating, Inc., No. EDCV 17-2196-JAK-FEMx, 2018 WL 1183354, at *5 (C.D. Cal. Mar. 7, 2018). Here, as outlined in Section IV.1, assuming a 1:1 ratio of punitive damages to economic damages, Plaintiff's projected punitive damages are $24,090 as of the date of Defendants' Notice of Removal or $64,240 as of the date of trial.